UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ANTHONY J. SARRO, MD, PRO-SE,    :
 

                 Plaintiff,    :

                     :     MEMORANDUM & ORDER

     -against-    :

                     :     16-cv-5066 (ENV) (ST)

BANK OF AMERICA; and    :
MUTUAL OF NEW YORK,    :
 

            Defendants.    :
-------------------------------------------------------------- x

VITALIANO, D.J.

    In June 2016, Dr. Anthony Sarro filed a *pro se* complaint in Kings County Supreme

Court against defendants Bank of America ("BOA") and Mutual of New York ("MONY"),

which was removed here.  Dr. Sarro has moved to remand; defendants have moved to dismiss.

For the reasons that follow, remand is denied and the complaint is dismissed.

## Background[1]

    On October 18, 1989, MONY issued a group life insurance certificate, which insured,

presumably among others, the life of Dr. Sarro, and, as to him, in the amount of $2,400,000.

Dkt. No. 1-2 at 4.  The certificate was issued under a group universal life plan.  In fact, the policy

---

[1] The Court's inquiry, even at this state of the litigation, is not limited solely to factual allegations expressed in the complaint; a complaint can be "deemed to include any documents incorporated into it by reference." *Zapotocky v. CIT Bank, N.A.*, __ F. Supp. 3d __, 2018 WL 3104090 (S.D.N.Y. June 22, 2018) (citation omitted).  Where a plaintiff does not explicitly do so, "the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citation omitted).  Additionally, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 123 n.1 (2d Cir. 2013).  Therefore, the facts, deemed true for the purposes of these motions are drawn from the complaint, from such documents related to assertions made in the complaint and from plaintiff's papers.

was issued as part of a group multiple employer welfare benefit plan and trust. Dkt. No. 1-3 at 2. The certificate's owner was not Dr. Sarro, rather, it was designated as the group universal life plan policyholder. *Id.* At the time of issuance, the policyholder was Norstar Trust Company ("Norstar"). *Id.* The policy contained a section that provided definitions applicable in interpreting the policy. Perhaps confusingly, the "owner" of the policy is referred to as "you." At no time, did a policy reference to "you" ever mention Dr. Sarro. Using the policy's nomenclature, "you" or "Certificate Holder who is so named on page 1," means, in this case, the group policyholder. Dkt. No. 1-3 at 7. The policy went on to provide that, without regard to the identity of the policyholder, during Dr. Sarro's lifetime, "all rights under his coverage belong to you." Dkt. No. 1-3 at 13. It also authorizes the group policyholder to surrender Dr. Sarro's coverage, at any time before his death, for its cash surrender value. Dkt. No. 1-3 at 16. The certificate also provided that, if coverage "is surrendered for its surrender value," coverage is terminated. Dkt. No. 1-3 at 17. Finally, the certificate provided that annual reports would be sent to the defined "you," again a defined term that never referenced Dr. Sarro. Dkt. No. 1-3 at 9. Unhinged to specific policy terms, Dr. Sarro alleges that MONY "allowed ownership of the policy to fall into the hands of others, surrendering it, failing to notify the insured, leaving him without insurance protection to this date, and allowing others to profit enormously." Dkt. No. 1-2 at 5.

Dr. Sarro alleges that Norstar was acquired by Security Pacific Bank ("Pacific") in May 1991, and that Pacific then became the successor plan trustee and certificate owner. Dkt. No. 1-2 at 5. In September 1991, a quarter of a century before this complaint was filed, the certificate was surrendered by Pacific. *Id.* In return, MONY issued a check to Pacific for the surrender proceeds in the amount of $521,507.08. *Id.* Thereafter, the facts are murkier. The complaint

2

and Dr. Sarro's reply to the motions to dismiss include a slew of documents relating to plaintiff's efforts to investigate what became of his insurance certificate. What is clear from those documents beyond the murk is that, between 1991 and 2012, Dr. Sarro did not inquire at all about the policy. It was then that he sent a demand letter to BOA. *See, e.g.,* Dkt. No. 35-10 at 7 (September 5, 2012, "Letter of Demand" to BOA).

Four years after his demand letter, Dr. Sarro filed a *pro se* complaint in Kings County Supreme Court (June 21, 2016), against MONY and BOA. Dkt. No. 1-2. Those defendants each received the summons and complaint on August 17, 2016. MONY filed its notice of removal on September 13, 2016, which BOA consented to. Dkt. Nos. 1, 1-4.[2]

## Standard of Review

Despite the suggested supremacy of their title, federal courts are courts of limited subject matter jurisdiction. *Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 424 (E.D.N.Y. 2017). The federal removal statute does not expand those jurisdictional limitations placed on federal courts. *See* 28 U.S.C. § 1441(a) (permitting "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to be removed to federal court). Accordingly, if a federal court lacks subject matter jurisdiction over the removed action, the case must be remanded to the court it originated in. *See* 28 U.S.C. § 1447(c). Moreover, removal statutes are to be strictly construed in light of the significant federalism concerns they raise, and, resultingly, any doubts are to be resolved in favor of remand. *BGC Partners, Inc. v. Avison Young (Canada), Inc.*, 919 F. Supp. 2d 310, 313 (S.D.N.Y. 2013). The party seeking removal "bears the burden of demonstrating the propriety of removal." *O'Donnell v. AXA Equitable Life*

---

[2] The action was timely removed.  28 U.S.C. § 1446(C).

3

*Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018).

Assuming the existence of federal subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing such motions, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Charles P. Anzelone, Christopher Young, v. ARS Nat'l Servs., Inc.*, 2018 WL 3429906 (E.D.N.Y. Jul. 16, 2018). To survive a 12(b)(6) motion, a complaint must plead enough facts "'to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964, the pleading rules do demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 678. Of course, where a plaintiff proceeds *pro se*, as here, the district court must read the complaint liberally, affording his pleadings the strongest interpretation possible. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007).

## Discussion

Dr. Sarro's complaint raises two foundational grievances. First, he claims that he was wrongfully kept in the dark because MONY failed to send him annual reports, which he contends they were contractually obligated to do. Dkt. No. 1-2 at 5-6. MONY, he contends, failed to

4

question the timing of the surrender, and should have discussed the proposed surrender with him or informed him of its happening. *Id.* By failing to do so, Dr. Sarro argues, MONY breached fiduciary duties to him. *Id.* Second, as to BOA, his complaint alleges that, because Pacific was acquired by BOA, BOA has assumed the assets, liabilities, and benefits of Pacific, and that the surrender payment profited BOA, presumably at his expense. *Id.* at 6. Because BOA, standing in the shoes of Pacific, has profited, he argues that by their failure "to recognize the inherent fraudulent nature" of the transactions in question, BOA must compensate him.

Affording Dr. Sarro the solicitude due his *pro se* status, the Court reads his complaint to bring common law breach of contract and breach of fiduciary duty claims against MONY, and common law fraud and conversion claims against BOA. In that posture, Dr. Sarro tersely requests that his complaint be remanded to state court.[3] Dkt. No. 18 at 1. He contends that his state law claims are not preempted under ERISA, pointing to 29 U.S.C. § 1144(b)(2)(A), and arguing that "ERISA does not preempt state insurance rules and regulations." *Id.* at 3-4.

In response, MONY replies that Dr. Sarro "is not relying on any state law" regulating insurance for his claims, but, rather, his complaint asserts "generic common law claims for breach of contract and breach of fiduciary duty." Dkt. No. 24 at 2. That leads MONY to its contention that Dr. Sarro's claims are preempted by ERISA's express preemption provision, 29 U.S.C. § 1144(a), which wipes out "any and all State laws insofar as they may now or hereafter

---

[3] In his sur-reply, Dr. Sarro claims that he has "standing for civil action, or other appropriate relief, 29 U.S.C. § 1132(a)(2) and § 1132(a)(3)," as well as "29 U.S.C. § 1101." Dkt. No. 34 at 3-4. He specifically responds to the defendants' pre-emption claims by noting that "he will withhold arguments for or against this question [preemption] until the decision is made by the court in whose hands the case now resides[.]" Dkt. No. 34 at 5. While these statements could be construed as abandoning his motion to remand, the Court will not deem it so, given his *pro se* status.

relate to any employee benefit plan." Dkt. No. 20 at 5 (citing § 1144(a)). MONY notes,

moreover, that the Second Circuit has held that state law claims are only saved from ERISA

preemption "if they are based upon a state law [regulating] insurance," and, if that state law is

"specifically directed towards entities engaged in the business of insurance." *Id.* at 2-3. As

applied here, MONY argues, preemption does oust state law because Dr. Sarro seeks to recover

money allegedly owed to him under the Certificate's terms through state law claims, which do

not fall within ERISA's savings clause. *Id.* at 2-3. BOA offers a "me, too" argument, observing

that through his own factual allegations, Dr. Sarro admits that ERISA applies, and that his life

insurance relates to an employee benefit plan – specifically, the pension plan. Dkt. No. 32 at 9.[4]

Ultimately, as the waffling in Dr. Sarro's sur-reply suggests, preemption does not present

a close question. Defendants are correct that Dr. Sarro's claims are preempted by ERISA. First,

the Supreme Court has made plain that state laws must be "specifically directed toward the

insurance industry in order to fall under ERISA's saving clause." *Kentucky Ass'n of Health

Plans, Inc. v. Miller*, 538 U.S. 329, 334, 123 S. Ct. 1471, 1475, 155 L.Ed.2d 468 (2003). To

start, Dr. Sarro has not indicated that his claims are brought pursuant to a specific state law

regulating insurance. In fact, the language that he uses, *e.g.,* "fraud," "fiduciary duty," and the

relief that he seeks – money – make clear that he seeks to vindicate his rights under state

common law of contract and tort. Dispositively, the Supreme Court has held that, where a state

law is not directed at the insurance industry, "any state-law cause of action that duplicates,

supplements, or supplants the ERISA civil enforcement remedy conflicts" with congressional

intent to make ERISA the exclusive remedy, and, therefore, is preempted. *Aetna Health Inc. v.*

---

[4] As noted in footnote 3, *supra*, Dr. Sarro does, in fact, claim to have ERISA standing.

6

*Davila*, 542 U.S. 200, 209, 124 S. Ct. 2488, 2495, 159 L.Ed.2d 312 (2004). Consequently, Dr. Sarro's motion to remand is denied. Now, however, given Dr. Sarro's *pro se* status, and not withstanding the complaint's use of state law language, under the obligation to view the pleadings of a self-represented party in their totality, the Court revisits Dr. Sarro's complaint and construes it as raising ERISA breach of fiduciary duty claims brought under 29 U.S.C. § 1109 against MONY and BOA, and as raising denial of benefit claims under 29 U.S.C. § 1132 against MONY. *See* 29 U.S.C. § 1109 (titled "Liability for breach of fiduciary duty"); § 1132 ("Civil enforcement").

Notwithstanding its recasting, the complaint advances claims that must confront, but will not overcome, a threshold obstacle. Both MONY and BOA raise the statute of limitations as a defense to all claims. MONY asserts that the acts of which Dr. Sarro complains of accrued in 1991, which was when the claim accrual clock started to run. Dkt. No. 20 at 15. Picking up the thread of this argument, BOA contends that whether the court determines that the claims are brought under ERISA or state law, the requisite statute of limitations is, at best for him, six years – plainly a time long since past. Dkt. No. 30 at 5-6.

It is true that under 29 U.S.C. § 1113, any breach of fiduciary duty claim must be brought no later than six years after the alleged breach. 29 U.S.C. § 1113. However, the same statute permits a plaintiff with "actual knowledge of the breach" to get around this six year limitations period, and bring his claim "within three years of acquiring [that] actual knowledge." *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 610 (S.D.N.Y. 2015).[5] To state it plainly, a

---

[5] The statute of limitations for a breach of contract claim under New York law is six years, while a fraud claim must be brought within the greater of six years "from the date the cause of action accrued" or two years from the date the plaintiff, exercising reasonable diligence,

plaintiff whose fiduciary breached a duty in 2000, would ordinarily have six years – until 2006, then - to bring a claim under § 1113. However, if that same plaintiff is able to show that he actually learned of the breach in 2007, would then have three years from that date to bring the requisite claim. And, for claims under 29 U.S.C. § 1132(a)(1)(B) claims brought in New York, the Second Circuit applies the six-year statute of limitations found in N.Y. C.P.L.R. § 213. *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009). The six-year period of limitation begins to run "when there has been 'a repudiation by the fiduciary which is clear and made known to the beneficiaries.'" *Valle v. Joint Plumbing Indus. Bd.*, 623 F.2d 196, 202 n.10 (2d Cir. 1980) (quoting *In re Barabash*, 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 893, 286 N.E.2d 268, 270 (1972)). This cause of action accrues, moreover, when a plaintiff "discovers, or with reasonable diligence should discover, the injury that gives rise to his claim." *Carey v. Int'l Bhd. Of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999).

Even affording him the most liberal interpretation of his filings and as raising the most favorable inferences they permit, Dr. Sarro's claims under § 1113 are plainly time-barred. Dr. Sarro, fatally, provides no satisfactory explanation for the over 20 year gap between the surrender of the insurance certificate and his filing of this lawsuit. He only began to inquire into the policy, he says, in summer 2012. This means, by his own admission, that he had "actual knowledge" of the alleged breach of his rights, whether under ERISA or state law, upon the

---

could have discovered it. N.Y. C.P.L.R. § 213(2), (8). For a breach of fiduciary duty claim seeking monetary damages, the statute of limitations is three years. N.Y. C.P.L.R. § 214(4); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139-40, 907 N.E.2d 268, 272, 879 N.Y.S. 355, 359 (2009). The same is true for a conversion claim, starting from the time the conversion takes place. N.Y. C.P.L.R. § 214(3); *see also St. John's University, New York v. Bolton*, 757 F. Supp. 2d 144, 179 (E.D.N.Y. 2010).

surrender of his life insurance coverage, in summer 2012. Nonetheless, he did not file his complaint until June 2016 – four years later and a year after the most generous interpretation of the statute of limitations. *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d at 610.

Similarly, Dr. Sarro's claims under § 1132(a)(1)(B) are time-barred. In his complaint, Dr. Sarro stated that he stopped paying premiums in 1991. Even viewing the complaint in the light most favorable to him, over 25 years without paying an insurance premium should have raised a few questions.[6] The exercise of reasonable diligence at any point between 1991 and 2012, would have made plain that the insurance certificate had been surrendered.

Fighting back, but without factual assertions, Dr. Sarro tersely invokes the doctrine of equitable tolling. He claims that he "took action in a timely manner after he discovered the . . . loss of surrender of the insurance policy, such facts having been withheld from him by MONY." Dkt. No. 23 at 3. He goes on to forecast that "had he been informed that he was no longer insured and that the surrender proceeds . . . were given to others," he would have taken action. *Id.*

Certainly, it is true that "when [a] defendant fraudulently conceals [a] wrong, the time does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir. 1983) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S. Ct. 582, 584–85, 90 L. Ed. 743 (1946)). However, a plaintiff seeking to invoke equitable tolling bears the burden of

---

[6] To the extent, however, that the untimeliness of Dr. Sarro's § 1132(a)(1)(B) claims could be excused, Dr. Sarro's claims would be dismissed for failure to a state a claim. This is, unless the insurer for an ERISA plan meets the statutory definition of a plan administrator, the insurer – here, MONY – is not a proper defendant for a recovery of benefits claim. *Schur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96, 109 (S.D.N.Y. 2008).

showing that he is entitled to the relief. This can be done by showing "(1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way

and prevented timely filing." *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *see also*

*Joyce A. McMahon, Plaintiff, v. Janet Napolitano, Defendant*, 2015 WL 13731355, at \*5

(E.D.N.Y. Sept. 5, 2015). But, where, as here, a plaintiff seeks to invoke fraud or concealment

to establish equitable tolling, the complaint "must allege that a fiduciary either '(1) breached its

duty by making a knowing misrepresentation or omission of a material fact to induce an

employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a

breach of fiduciary duty.'" *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 674

(S.D.N.Y. 2018) (citation omitted).

  The record facts make plain, no matter how viewed in plaintiff's favor, that Dr. Sarro has

not, and cannot, make the showing necessary to establish equitable tolling. Specifically, his

complaint makes no showing that there has been any misrepresentation or an omission of a

material fact that either defendant had a fiduciary duty to make known to him which induced him

to act to his detriment. He also pleads no fact from which to infer that MONY or BOA acted to

hinder discovery of any claimed breach of any right he may have had under ERISA, including

coverage under a group life insurance certificate. *Id.* at 675. Moreover, assuming that his §

1113 cause of action accrued in 2012, and not in 1991, when the group certificate was

surrendered, and given his submission of documents that establishes he did have actual

knowledge then, Dr. Sarro makes absolutely no showing of any extraordinary circumstances

excusing his failure to file his action, which he brought one year after the expiration of the three

year limitations period under 29 U.S.C. § 1113. *In re Express Scripts/Anthem ERISA Litig.*, 285

F. Supp. 3d 655 at 675.

10

Case 1:16-cv-05066-ENV-ST Document 40 Filed 08/29/18 Page 11 of 11 PageID #: 1331

Having failed to establish equitable tolling, all of the claims interposed in the complaint are plainly time-barred. The motions of defendants to dismiss them are, resultingly, granted on that basis. Since his pleadings and related document submissions make the conclusion unassailable that any attempt to amend to avoid the time bar would be futile, leave to amend will not be granted. *See Terry v. Incorporated Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).

## Conclusion

For the foregoing reasons, plaintiff's motion to remand is denied. The motions of defendants to dismiss are granted. Given its futility made obvious by plaintiff's own submission, plaintiff is denied leave to amend.

Regardless of who may have paid the filing fee here and in state court, the Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal would not be taken in good faith and, therefore, *in forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to plaintiff, to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York
July 31, 2018

/s/ Hon. Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge